UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA DOSKOCZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSOCIATION LIEN SERVICES,<br><br>Defendant. | Case No. 15-cv-01525-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 53 |

Plaintiff Teresa Doskocz brings this putative class action against defendant Association Lien Services ("ALS"). She alleges claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, premised on violations of the California Davis-Stirling Common Interest Development Act ("Davis-Stirling Act"), Cal. Civ. Code § 4000 *et seq*. That statute governs, among other things, the imposition and collection of assessments due to homeowners associations ("HOAs").[1]

ALS has moved for summary judgment on multiple elements of the claims. The Court has determined that resolution of the incurred costs and payment allocation issues is likely to substantially affect the scope of the remaining claims, and the extent to which further summary judgment or other proceedings will be useful. Consequently, this order resolves those two issues and provides direction to the parties on next steps.

---

[1] The Davis-Stirling Act was renumbered and significantly expanded on January 1, 2014. This order uses the current California Civil Code section numbers with reference to the prior version when helpful.

**BACKGROUND**

The salient facts are largely undisputed. Doskocz owns a townhouse in Danville, California, and is a member of the Danville Green homeowners association. In 2013, she ran into financial difficulties and missed payment on two months of homeowners' dues to Danville Green in an amount totaling approximately $616 including late fees. Dkt. No. 1 ¶¶ 31-35. When Doskocz tried to true up her account, she learned that it had been referred to ALS. ALS describes itself as a corporation that "assists homeowners associations" by collecting delinquent assessments "via the non-judicial foreclosure process" under California law. Dkt. No. 53-1 at 1. ALS's president is a lawyer and the managing partner of a law firm that specializes in the law of homeowners associations. *Id.*

Doskocz got a letter from ALS dated November 7, 2013, stating that she owed $1,239.08 for her original missed dues and late fees, plus $587.50 for costs and fees charged by ALS. Dkt. No. 1 ¶ 38; Dkt. No. 1-3, Exh. A. She asked for a payment plan to resolve the debt. Dkt. No. 1 ¶¶ 39-40. In January 2014, Doskocz and ALS executed a six-month payment plan. Dkt. No. 54-2, Exh. J. By that time, ALS said Doskocz's debt had increased to $2,479.44, due in large part to ALS's fees, and the plan contemplated that she would pay off that amount along with regularly scheduled assessments in six monthly installments of $669.26. *Id.* As a condition of accepting the payment plan, ALS required Doskocz to waive California Civil Code section 5655(a), a section of the Davis-Stirling Act that requires HOAs to apply payments to the delinquent assessments first until fully paid, and only after that to collection fees and costs. *Id.* The record indicates that ALS combined Doskocz's delinquent assessments and collection costs in a single statement of account and applied payments without priority to the assessments. *See, e.g.,* Dkt. No. 1-3, Exh. C.

Doskocz made five payments but missed the last installment in June 2014. She asked to pay that off over two installments, which ALS indicated would require a new payment plan. Dkt. No. 1 ¶¶ 46-47. ALS sent her proposed terms in July 2014, which said she now owed $1,074.90 and would have to pay an additional $150 fee. *Id.* ¶ 47. Doskocz declined the proposal. Dkt. No. 53-2, Exh. F. She sent ALS a check for $537.45, half of the outstanding balance, which ALS cashed and then charged her a $40.00 partial payment fee. Dkt. No. 1 ¶¶ 48-49.

1    In August 2014, she sent a letter to Danville Green directly and asked to pay the remaining
2    balance and current assessments, plus late fees. *Id.* ¶¶ 50-51. The request was accepted, and she
3    made the back payments and resumed paying Danville Green's monthly assessments in October
4    2014. Nevertheless, on October 17, 2014, she received a letter from ALS stating that she still
5    owed $830.73, and that a lien had been recorded against her property. Dkt. No. 1-3, Exh. C. It
6    appears that ALS also recorded a lien and notice of delinquent assessment against the property in
7    December 2013. *Id.*, Exh. B. Doskocz states that the lien had not been released as of the filing of
8    the complaint in April 2015. Dkt. No. 1 ¶ 53.

## DISCUSSION

The parties' main legal dispute is whether ALS violated sections of the FDCPA and UCL by pursuing collection actions for debts that were not legally enforceable against Doskocz under the Davis-Stirling Act. The FDCPA is a federal consumer protection law intended to shield the public from the menace of unscrupulous and dishonest debt collectors. It was enacted specifically to bar "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers." 15 U.S.C. § 1692(e). Among other provisions, the FDCPA makes it illegal to: collect charges not permitted by law (15 U.S.C. § 1692f(1)); falsely represent the character, amount or legal status of the debt (§ 1692e(2)(A)); falsely represent the compensation lawfully permitted for services (§ 1692e(2)(B)); threaten to take any action that cannot legally be taken or that is not intended to be taken (§ 1692e(5)); use false representations or deceptive means to collect or attempt to collect the debt (§ 1692e(10)); and threaten to take nonjudicial action to effect dispossession of the property (§ 1692f(6)). The UCL claim here does nothing more than incorporate these same provisions as the basis for recovery.

The gist of Doskocz's complaint is that just about every fee and charge ALS sought to collect was barred by the Davis-Stirling Act and so pursuing them necessarily violated the FDCPA and UCL. Specifically, Doskocz says that ALS contravened the Davis-Stirling Act by:
(1) charging for fees not actually incurred by the Danville Green HOA; (2) failing to apply payments to the delinquent principal first before applying them to late fees and related charges;

3

(3) seeking late fees greater than 10% and interest greater than 12%; (4) refusing to accept partial payments; and (5) threatening foreclosure over amounts of less than $1,800 or that were delinquent for less than one year.  Dkt. No. 1.

ALS seeks summary judgment on the ground that all of its collection practices were perfectly legal under the Davis-Stirling Act.  With respect to the FDCPA, ALS does not dispute that Doskocz is a consumer, that her debt arises out of a transaction for personal purposes, or that ALS qualifies as a debt collector.  Dkt. No. 53-1 at 11-12; *see also Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004) (stating FDCPA elements).  ALS contests only that it violated any provision of the FDCPA through the conduct Doskocz alleges.

## I.     INCURRED COSTS

The first summary judgment issue is whether ALS sought to collect on fees and charges that Danville Green did not actually incur.  Under the Act, an HOA "shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."  Cal. Civ. Code § 5600(b).  If a homeowner becomes delinquent on assessments, the HOA may also recover "reasonable costs incurred" in collecting the delinquent debt, including attorney's fees, 12% interest, and 10% late fees.  Cal. Civ. Code § 5650(b).  Doskocz alleges that ALS violated these provisions by doing business with Danville Green under a "no upfront cost" model, which Doskocz construes to mean that ALS levied fees and costs that Danville Green never actually incurred.  Dkt. No. 1 ¶ 69; Dkt. No. 58 at 2-5.

Central to the resolution of this issue is the undisputed fact that ALS provides collection services to Danville Green under a Delinquent Assessment Collection Agreement ("DACA") effective as of January 2011.  Dkt. No. 54-1, Exh. B.  The DACA retains ALS as Danville Green's agent to pursue collection activities on its behalf.  *Id.*  Among other provisions, the DACA sets out a list of fees and costs that ALS may charge for its services, and authorizes ALS to collect those service fees and costs directly from the homeowner.  *Id.*; *see also* Dkt. No. 54-1, Exh. C.  The agreement also provides that Danville Green retains ultimate liability for paying ALS's fees and costs, subject to a potential discount, if ALS cannot recover them from the homeowner because it

is "unable to proceed with the lien and/or foreclosure process" or "if, upon sale, the property reverts to the HOA, for any reason." Dkt. No. 54-1, Exh. B.

Nothing in this arrangement points to a violation of section 5600(b) or section 5650(b). As an initial matter, vendors like ALS are free to charge fees and costs for their collection services that HOAs themselves could not. California courts have definitively held that, "[w]hile section 1366.1 [now § 5600(b)] prohibits an association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted." *Brown v. Prof'l Cmty. Mgmt., Inc.*, 127 Cal. App. 4th 532, 539 (2005); *see also Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1552 (2007) (same). As *Brown* noted, section 1366(e) (now §5650(b)) expressly authorizes vendor markups for the type of fees Doskocz challenges here. 127 Cal. App. 4th at 539. So long as the HOA itself gets no windfall and the service provider's charges are not unreasonable, the vendor may set its fees constrained by competitive forces and not the statute. *Id.*; *see also Berryman*, 152 Cal. App. 4th at 1552; *Fowler v. M & C Ass'n Mgmt. Serv., Inc.*, 220 Cal. App. 4th 1152, 1159 (2013).

California courts have also held that the "costs incurred" by an HOA "necessarily include the fees and profit the vendor charges for its services." *Brown*, 127 Cal. App. 4th at 539; *Berryman*, 152 Cal. App. 4th at 1552; *Fowler*, 220 Cal. App. 4th at 1157. Section 5650 "contemplates that the association will incur reasonable costs in connection with its collection efforts." *Brown*, 127 Cal. App. 4th at 539. The fact that ALS can pursue its service fees directly from the homeowner is of no moment. It "makes no difference that [the vendor] imposes the fees directly on the home buyer, rather than billing the HOA for its services and having the HOA assess the buyer for the cost of the fees and remitting that amount" to the vendor. *Fowler*, 220 Cal. App. 4th at 1157.

These holdings govern here. Doskocz does not challenge ALS's fees and costs as unreasonable. She proffers no evidence that Danville Green was in any way marking up assessments or other charges to generate a profit for itself. Her sole contention is that ALS levied collection fees and costs that it sought to extract from the homeowner directly, without first billing Danville Green. Under the governing case law, that claim cannot stand. In addition, Danville

Green unduly slights the uncontroverted fact that Danville Green hired ALS to collect delinquent assessments pursuant to a written agreement that spelled out ALS's fees, and made Danville Green ultimately liable for paying ALS's fees and costs if it could collect them from the homeowner through the lien or foreclosure process. Dkt. No. 54-1, Exh. B. As another case in this district recently observed, this type of arrangement parallels the service agreements in *Brown*, *Berryman* and *Fowler*. *Hanson v. JQD, LLC*, No. 13-05377 RS, 2014 WL 644469, at *5 and n.8 (N.D. Cal. Feb. 19, 2014).

This fact also distinguishes *Hanson* from this case. Doskocz relies heavily on it for the proposition that a "no cost" business model for assessment collection is illegal under the Davis-Stirling Act. Dkt. No. 58 at 4. But *Hanson* turned on the fact that the collection vendor there provided services "free of charge" and without any liability on the part of the HOA, and apparently in the absence of a contract like the one here. *Hanson*, 2014 WL 644469, at *1, *5. In addition, *Hanson* construed *Brown*, *Berryman* and *Fowler* to mean that the Davis-Stirling Act had "no bearing" on a service provider's fees when "the HOA hired a third-party vendor that, for a price, carried out certain tasks on behalf of the association." *Id.* at *5. That is the situation here.

Summary judgment is granted for ALS on the incurred costs issue, and Doskocz's claims based on that theory are dismissed. *See Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015) (Rule 56 permits "partial summary judgment" on portions of a claim).

## II.   ALLOCATION OF PAYMENTS

The second summary judgment issue is whether ALS was obligated to apply all of Doskocz's payments to the delinquent principal until that was satisfied, and before applying them to the collection fees and costs. The Davis-Stirling Act states that "any payments made by the owner . . . shall first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest." Cal. Civ. Code § 5655(a). ALS acknowledges this clear-cut statutory directive, but says that Doskocz waived it when she signed the payment plan.

Doskocz allows the presence of the waiver language in the plan she signed, and does not challenge it on grounds of unconscionability, duress, fraud or similar claims. Dkt. No. 58 at 8-14.

Doskocz's main argument in opposition to summary judgment is that the waiver is void as a matter of public policy under California Civil Code section 3513. As that section provides, anyone "may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Applying the section here, Doskocz says the waiver is invalid because it would contravene public policy to allow the payment allocation provision of the Davis-Stirling Act to be so readily gutted by private contract.

The California Supreme Court does not appear to have addressed this issue, and neither party has identified a case directly on point. Consequently, the Court is charged with determining how the California Supreme Court would likely hold based on all relevant authorities, including the statute and intermediate appellate court decisions. *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

While no dispositive case is available, the Court does not write on a blank slate. Whether a statutory provision can be waived by contract depends on the specific statute and the circumstances of each case. *See DeBerard Props., Ltd. v. Lim*, 20 Cal. 4th 659, 662-63 (1999). When the statutory language is plain and "brooks no interpretation" other than that a specific act is prohibited or required, allowing a contractual waiver "would [flout] the very purpose of the rule," even if the waiver were given in exchange for other concessions. *Id.* at 663 (brackets in original; internal quotation omitted). Applying these principles, the California Supreme Court held that California Code of Civil Procedure section 580b, which imposes a straightforward bar on deficiency judgments, could not be waived in an agreement to refinance a real estate loan. *Id.* at 662-63.

It is certainly true, as ALS mentions in the reply brief, that a waiver may be found if "the statute's 'public benefit . . . is merely incidental to [its] primary purpose,' and 'waiver does not seriously compromise any public purpose that [the statute was] intended to serve.'" *Id.* at 668-69 (quoting *Bickel v. City of Piedmont*, 16 Cal. 4th 1040, 1049-50 (1997)) (ellipses and brackets in original). But section 3513 bars the waiver of a statutory right when "the 'public benefit [of the statute] is one of the primary purposes.'" *Azteca Const., Inc. v. ADR Consulting, Inc.*, 121 Cal. App. 4th 1156, 1166 (2004) (quoting *DeBerard*, 20 Cal. 4th at 669) (brackets in original). The

7

1   waiver in *Bickel* was sustained because it involved a statutory deadline for processing construction

2   permits where the "'primary beneficiary of the time limits is the applicant'" and not the general

3   public. *Bickel*, 16 Cal. 4th at 1049 (internal quotation omitted). *DeBerard* distinguished *Bickel* on

4   that exact ground to find that the antideficiency statute before it had the public benefit as its

5   primary purpose, and "[i]n that sense it is unlike the act at issue in *Bickel*." 20 Cal. 4th at 669.

6       So too here. As an initial matter, California courts have consistently interpreted the

7   Legislature's use of "shall" in the Davis-Stirling Act to impose mandatory duties that cannot be

8   treated as merely permissive or optional. In *Diamond v. Superior Court*, 217 Cal. App. 4th 1172,

9   1190-91 (2013), for example, the court found the use of "shall" in the section governing notice of

10  liens to be strictly mandatory. Even more significantly, a recent California decision reached the

11  same result when construing "shall" in section 5655(a). The plain language of that section was

12  held to impose a mandatory duty to apply payments to the delinquent assessment until it is paid in

13  full before payments can be applied to collection fees and costs. *Huntington Cont'l Townhouse*

14  *Ass'n, Inc. v. Miner*, 230 Cal. App. 4th 590 (2014). "This section does not state an association has

15  the discretion to decline to follow the procedure set forth in the statute." *Id.* at 599. To the

16  contrary, section 5655(a) sets an order of allocation that requires paying off the assessments first,

17  and an association cannot "refuse to follow the statute's mandate." *Id.* at 602.

18      The public purpose and benefit inherent in the Davis-Stirling Act and section 5655(a)

19  specifically have also been established. There can be no serious doubt that the Legislature adopted

20  the Act for the primary purpose of protecting homeowner rights -- a quintessential public benefit.

21  *Diamond* and *Huntington* both highlight the Legislature's public purpose when it adopted section

22  1367.1, which was the original codification of section 5655(a). As *Diamond* found, an Assembly

23  Committee on Judiciary report states, "[t]his bill goes to the heart of home owner rights, touching

24  upon the key issue of when, if ever, a homeowners' association should have the right to force the

25  sale of a member's home when the home owner falls behind on paying overdue assessments or

26  dues." 217 Cal. App. 4th at 1190; *see also Huntington*, 230 Cal. App. 4th at 604 (same). A

27  Senate Judiciary Committee report added that "[t]his bill protects owners' equity in their homes

28  when they fail to pay relatively small assessments to their" HOAs. *Diamond*, 217 Cal. App. 4th at

8

1190; *Huntington*, 230 Cal. App. 4th at 604.  In light of these clear legislative expressions of intent, *Diamond* readily concluded, "the legislative history indicates that the public purpose of" section 1367.1 "was to protect the interest of the homeowner who has failed to timely pay an assessment."  217 Cal. App. 4th at 1190.

Consequently, the waiver of section 5655(a) is void as a matter of public policy.  The statute's plain language "brooks no interpretation" or legitimate question that the Legislature intended it to be mandatory and not subject "to the unfettered discretion of a private business" like ALS.  *Azteca*, 121 Cal. App. 4th at 1168.  It serves the important public purpose of protecting homeowner equity and rights by ensuring that a delinquent assessment, which is the original debt that opens the door to collection costs and ultimately foreclosure, is paid down as a first priority.  This allocation clearly serves the legislative goal of preventing foreclosure over small delinquencies, and operates to cut off a cascade of late fees and collection costs likely to lead to defaults and foreclosures.  To allow a waiver of this provision by contract would flout the very purpose of the section and the Davis-Stirling Act generally, and so the contract clause must be voided as against public policy.

## CONCLUSION

Summary judgment is granted for ALS on the incurred costs issue.  Summary judgment is denied for all defenses based on a waiver of section 5655(a).  Except as otherwise ordered, summary judgment is denied on all other claims without prejudice.

At this point, the Court will return the case to the parties for consideration of next steps.  Based on statements in the summary judgment briefs, it appears that the resolution of the incurred cost and waiver issues will affect the remaining claims and defenses.  The parties are directed to meet and confer on this issue, and to submit a joint statement to the Court proposing how the remaining disputes can be restated and streamlined in light of this order.  This statement should include a discussion of how the class certification motion is affected by this order.  The joint statement is due by **January 24, 2017**.

//

//

The Court will discuss the proposal with the parties at a status conference on **February 2, 2017, at 10:00 a.m.** in Courtroom 11 at the San Francisco courthouse.

**IT IS SO ORDERED.**

Dated:  December 23, 2016

JAMES DONATO
United States District Judge